**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

_____

LAKE CHEROKEE HARD DRIVE
TECHNOLOGIES, L.L.C., a Texas limited
liability company,

              Plaintiff,

    v.

BASS COMPUTERS, INC., a Texas
Corporation; HITACHI GLOBAL STORAGE
TECHNOLOGIES, INC., a Delaware
Corporation; LSI CORPORATION, a Delaware
Corporation; MARVELL SEMICONDUCTOR,
INC., a California Corporation; SAMSUNG
SEMICONDUCTOR, INC., a California
Corporation; TECH DATA CORPORATION,
a Florida Corporation,
STMICROELECTRONICS, INC., a Delaware
Corporation, and STMICROELECTRONICS
N.V., a Netherlands Corporation

              Defendants.
_____

CIVIL CASE NO. 2:10-CV-216

JURY REQUESTED

## Plaintiff Lake Cherokee Hard Drive Technologies' Opposition to Defendants' Joint Motion to Transfer Venue

## I.     Introduction

Defendants have failed to meet their burden of showing that "the transferee venue is clearly more convenient."  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II").  As shown below, no factor weighs in favor of transfer.  First, the proposed transferee venue is less convenient on average for the Defendants' witnesses, third parties, and Plaintiff.  Second, significant sources of proof are found in this District and the state of Texas. Accordingly, the motion to transfer must be denied.

## II.    Lake Cherokee's choice of venue.

Defendants argue that "Lake Cherokee's Choice of Venue Receives No Deference." Mot. at 7-8.  They assert that that since Lake Cherokee was incorporated "<u>days before</u> being assigned the patents-in-suit and <u>only months before</u> filing this suit in this district," the decision to incorporate in Texas was made "specifically and solely to use its courts."  Mot. at 8.  This argument fails.  Lake Cherokee was not incorporated in Texas for the "purpose of making [this] forum appear convenient" – instead, Lake Cherokee is based in East Texas because it is the most logical location for its business, since its parent company, President, and owners all live in this district.

First, Lake Cherokee's is a wholly owned subsidiary of STAR CO, a Texas company permanently based in the Eastern District of Texas.  Coverstone decl. ¶¶4-7.  STAR CO has been in operation since November 2009, and provides services in the areas of science, technology, and advanced research.  *Id.* ¶¶4-5.  STAR CO's operations, including its facility, employees, decision-maker, and owners, are all in East Texas.  *Id.* ¶¶4-8.  In addition, STAR CO shares its employees with Lake Cherokee.  *Id.* ¶8.  Accordingly, the presence of STAR CO and its

affiliates in the Eastern District of Texas made this district a logical place for Lake Cherokee to be based.

Second, Lake Cherokee's only officer and "president . . . has lived in the Eastern District of Texas for over a year. Thus, it is natural and logical for the limited liability company to be formed under Texas laws and the office to be located in the Eastern District of Texas." *Texas Data Co., L.L.C. v. Target Brands, Inc.*, 2011 U.S. Dist. LEXIS 2917, *43 (E.D. Tex. Jan. 12, 2011). Tom Coverstone, the President of STAR CO and Lake Cherokee, resides with his family in Hallsville, Harrison Country, in the Eastern District of Texas. Coverstone decl. ¶3. Likewise, the owners of STAR CO (and Lake Cherokee) reside in the Eastern District. *Id.* ¶3-8. Thus, it was natural for Lake Cherokee to be incorporated where its president and only officer resides.

Moreover, Lake Cherokee and STAR CO's ties to East Texas are tangible and permanent, not ephemeral. STAR CO has been operating in East Texas since 2009. *Id.* ¶4. In addition to Tom Coverstone, STAR CO currently has five employees, as well as a product in development. *Id.* ¶¶5, 8. STAR CO and Lake Cherokee will soon be moving into a 10,000 square foot building owned by STAR CO in Longview, Texas. *Id.* ¶7. Similarly, the principal decision-maker for STAR CO and Lake Cherokee, Tom Coverstone, is a permanent resident of this district. He has had a Texas driver's license since 2005, he votes in this district, and this district is home to him and his family. *Id.* ¶3. Accordingly, the suggestion that Lake Cherokee's ties to Texas are ephemeral is wrong. *See Eolas Techs., Inc. v. Adobe Sys., Inc*., 2010 U.S. Dist. LEXIS 104125, *20- 21 (E.D. Tex. Sep. 28, 2010) (plaintiff's presence in this district is "not ephemeral" where its only office in this district, its chief legal officer and his family own a home in the district, and it "is conducting its normal business here.") (writ of mandamus denied in *In re Google Inc.*, 2011 U.S. App. LEXIS 4381 (Fed. Cir. Mar. 4, 2011)); *NovelPoint Learning LLC v. LeapFrog Enters.*, 2010 U.S. Dist. LEXIS 128906, *10-14 (E.D. Tex. Dec. 6, 2010)

(NovelPoint's "presence in Texas is not 'recent' or 'ephemeral' under Federal Circuit precedent, where "two of NovelPoint's three principals live in Texas.").

## II.     Transfer is not "clearly more convenient."

"When deciding whether to transfer venue, a district court balances two categories of interests." *Norman IP Holdings, LLC v. Casio Computer Co.*, 2010 U.S. Dist. LEXIS 114408, *6 (E.D. Tex. Oct. 27, 2010).  "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II,* 371 F.3d 201, 203 (Fed. Cir. 2004).  The public interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Norman IP Holdings*, 2010 U.S. Dist. LEXIS 114408, 6-7.

### A.     "relative ease of access to sources of proof"

This factor supports transfer where the relevant evidence is located entirely or primarily in the transferee venue. *Volkswagen II*, 545 F.3d at 316 (transfer granted where all documents relating to accident and all physical evidence were in the transferee forum).  Here, it does not favor transfer.

First, the following sources of documentary proof are located in Texas:

- Plaintiff's documents are located in the Eastern District of Texas.  Coverstone decl. ¶9.

- Documents for Bass Computers, which is a Texas company, are likely to be located at its headquarters in Houston, Texas, and its other Texas offices.

- Documents in LSI's offices in Plano, Houston, and Austin, Texas.  *See* Defs. Exh. 7.[1]

- Documents in Samsung's Austin and Houston offices.  *See* Defs. Exh. 6.

- Documents in Tech Data's distribution center in Fort Worth, Texas.  *See* Defs. Exh. 10.

- Documents in the possession of Cirrus Logic, the original assignee to the patent are likely to be located in Austin, Texas, where Cirrus Logic is located.

- Plaintiff has also identified thirteen third party witnesses in Texas, two of whom are located within this District.  Cho decl. ¶10-11.  To the extent that those third parties have documents relevant to this litigation, they are likely to be located in this state, and/or in this District.

Second, additional sources of proof for three out of five Defendants are likely to be found substantially closer to this district than the Northern District of California. As mentioned above, since Bass is located in Texas, its documents will likely be found in this state.  Tech Data's declaration states that its files are located primarily in Florida, which is closer to this District.  Defs. Exh. 10.  In addition, the only LSI employees identified to date with knowledge of the development, operation, implementation, revenues, and licensing of the accused products are located in Allentown, Pennsylvania.  Cho decl. ¶4 n. 1.  Accordingly, LSI's documents relating to this litigation are likely to be found in Pennsylvania, closer to this district.

Moreover, even as to Marvell and Samsung, it is likely that substantial documentation will be located outside of the proposed transferee venue.  Marvell's own website suggests that Marvell's System Engineering Group for Hard Disk Drive Read Channels is located in Longmont, Colorado.  Cho decl. ¶14.  Accordingly, it is likely that Marvell's documents

---

[1]    LSI states that its office in Plano, Texas office has no documents relating to the "development or manufacture" of read channels.  Defs. Exh. 7.  However, since the office is a sales office, LSI's Plano office may have sales documents relating to the read channels, which are relevant to damages.

regarding the engineering of its accused products (e.g. read channel chips) are in Longmont, Colorado.  In addition, since Samsung states that it believes that potential witnesses are located in South Korea, Defs. Exh. 9, documentary evidence regarding Samsung's products is likely to be found in Korea.

Third, documents relating to third parties are likely to be where they reside.  On average, the third parties are over 900 miles closer to this district than the Northern District of California.  Cho decl. ¶11.  Accordingly, the third party documents are likely much closer to this district.

Defendants' assert, "the bulk of physical and documentary evidence relevant to the issues . . .  will be found in California, where most of the Defendants' maintain their headquarters."  Mot. at 9.  However, this is unsupported by even the evidence submitted by Defendants.  The affidavits submitted by four out of five defendants (Tech Data, Bass, Samsung, and LSI) fail to assert that a single relevant document is located in the Northern District of California.  Defs. Exh. 6, 7, 9, 10.  In addition, even as to Marvell, it appears that documentary evidence regarding the engineering of the accused products is likely to be located in Longmont, Colorado.  *See* Cho decl. ¶14.  Accordingly, this factor weighs heavily against transfer.

**B.**      **"availability of compulsory process to secure the attendance of witnesses"**

"The venue's ability to compel testimony through subpoena power is also an important factor in the § 1404(a) calculus."  *In re Acer Am. Corp.*, 626 F.3d 1251, 1255 (Fed. Cir. Dec. 3, 2010).

First, the Northern District does not have absolute subpoena power over all the third party witnesses.  The vast majority of the potential third party witnesses are outside the proposed transferee venue.  Cho decl. ¶11.

Second, the Eastern District of Texas has subpoena power over a greater number of third-party witnesses than the California court.  This Court's subpoena power extends to witnesses

within the state of Texas for purposes of trial, not just the 100-mile radius of this district.  *See*

Fed. R. Civ. P. 45(c)(3)(A)(ii); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D.

Tex. 2000) ("Since the specified witnesses reside within the State of Texas, they are within this

Court's subpoena range.").  Plaintiff has identified 13 potential third-party witnesses within the

state of Texas, over whom this Court will have subpoena power.  Cho decl. ¶11.

    Third, this Court has subpoena power over a substantial number of party witnesses.

Plaintiff Lake Cherokee and Defendant Bass Computers are located within this state, so their

witnesses will be subject to this Court's subpoena power.  In addition, Plaintiff has identified 19

party witnesses within the state of Texas over whom this Court will have subpoena power.  Cho

decl. ¶8.

    Defendants assert, "the majority of Defendants' witnesses with relevant information

reside and work in California, specifically in the Northern District."  Mot. at 10-11.  This

assertion fails, because Defendants consider just eight cherry-picked witnesses and conclude that

most witnesses live in the Northern District of California because five out of eight do.[2]

Moreover, Defendants' conclusion is belied by their own affidavits, which state:

- that "LSI believes its potential witnesses with knowledge related to this litigation reside

  in Allentown, Pennsylvania; Longmont, Colorado; Beaverton, Oregon, Ottawa, Canada;

  China; and Moscow," Defs. Exh. 7, ¶6;

- that Bass "has one sales representative that lives in Dallas, Texas;" Defs. Exh. 6, ¶2;

- that Marvell has "a handful of engineers located in China . . . who work on the research,

  design, and development of Marvell's read channel chips," Defs. Exh. 8, ¶6;

---

[2]    Defendants' motion states that six witnesses live in the Northern District of California,
but the motion and the affidavits only list five witnesses.  *See* Mot. at 11.

- that Samsung believes "that there may be personnel in South Korea . . . who may be able to testify about the technical issues in this case." Defs. Exh. 9, ¶8.

Notably, the affidavits supplied by Bass, Tech Data, and LSI fail to identify a single potential witness within the Northern District of California, while identifying potential witnesses in Texas, Florida, Pennsylvania, Colorado, Oregon, Canada, China, and Moscow. Accordingly, it is unlikely that even Defendants' own witnesses will be centralized in the Northern District of California.

### C. "the cost of attendance for willing witnesses"

"The convenience and cost of attendance for witnesses is an important factor in the transfer calculus." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). "Because inconvenience for witnesses increases with distance from home, the Fifth Circuit established the '100-mile' guideline. Under this tenet, when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1199 (internal quotation marks and citations omitted). This factor weighs against transfer.

### 1. Party witnesses.

First, the Eastern District of Texas is substantially more convenient for Plaintiff. Lake Cherokee is a Texas corporation headquartered in Longview, and Tom Coverstone, the president of Lake Cherokee, works in Longview and lives in Hallsville, Texas. Accordingly, the Eastern District of Texas is substantially more convenient for Plaintiff.

Second, the Eastern District of Texas will be more convenient for three out of five Defendants. Bass is headquartered in Texas. Tech Data is a Florida corporation with a distribution center in Texas. LSI's witnesses with knowledge of the accused products appear to be centered in Pennsylvania. This Court is closer to these witnesses than the Northern District of

California.  In addition, with respect to Marvell's employees in Longmont, Colorado, and Samsung's employees in Texas, this Court will also be more convenient.

Taking into account the party witnesses identified, this Court is 789 miles closer than the Northern District of California.  Cho decl. ¶8.

> ### 2.      Third-party witnesses.

Taking into account all the third party witnesses identified by Plaintiff and Defendants, this Court is, on average over 900 miles closer to the third parties than the Eastern District of Texas.  Cho decl. ¶11.  Accordingly, on average, the Eastern District of Texas is more convenient for the third party witnesses than the Northern District of California.

## D.      "all other practical problems that make trial of a case easy, expeditious, and inexpensive"

Defendants fail to assert that this factor weighs in favor of transfer. Plaintiff agrees that this factor does not weigh in favor of transfer.

Defendants do assert, however, that "transfer would not . . . prejudice Lake Cherokee." Mot. at 12.  This is false. Lake Cherokee is a Texas corporation that chose to sue in Texas.  Its parent corporation is in Texas, its offices are in Texas, and its President lives in Texas.  Moving the case to California would be extremely inconvenient and prejudicial to Plaintiff.  Plaintiff's case would be delayed, as Plaintiff starts over in a new jurisdiction; Plaintiff's witnesses would have to travel to California for trial; and (as described in the next section) Plaintiff would be substantially delayed in commencing trial and achieving a verdict.  This would be extremely detrimental for Plaintiff.

## E.      "administrative difficulties flowing from court congestion"

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Defendants' assert that the median length to trial in the Northern District of California is slightly shorter than in the Eastern District of Texas. Mot. at 12. That statistic, however, is misleading and irrelevant for two reasons. First, for patent cases, the average time to trial in the Northern District of California is about 40% greater than in the Eastern District of Texas (35 months compared to 25.6 months).[3] Second, because this case would arrive as the result of transfer, Plaintiff would have to start its case behind other litigants in the Northern District of California, which can tack on additional delays. For example, this Court ordered the transfer of *Abstrax v. Sun* to Northern California in October 2009. As of this writing, it has been 18 months and the Northern District of California has not yet scheduled a hearing to set a trial date. Thus, if this case were transferred to Northern California, it would almost certainly have a total time to trial that exceeds the median time to trial for that district. This weighs against transfer.

### F.      "the local interest in having localized interests decided at home"

As explained above, Lake Cherokee, its parent company, and principal witness are in the Eastern District of Texas. "[T]his district has a local interest in adjudicating this dispute because Plaintiff is a Texas entity." *Norman IP Holdings, LLC v. Casio Computer Co.*, 2010 U.S. Dist. LEXIS 114408, *19 (E.D. Tex. 2010). In addition, East Texas has a local interest, because the success of this local business directly affects local employment and the local projects that this local business supports (e.g. employment, internships, charitable giving). Coverstone decl. ¶12.

### G.      "familiarity of the forum with the law that will govern the case"

---

[3]      Mark A. Lemley, *Where to File Your Patent Case*, AIPLA Quarterly Journal, Fall 2010, at 5, 17-18, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1597919 (studying patent cases that were filed from 2000 –March 17, 2000).

Defendants do not assert in their motion that this factor weighs in favor of transfer.

Plaintiff agrees that this factor does not weigh in favor of transfer.

      **H.**     **"the avoidance of unnecessary problems of conflict of laws"**

Defendants do not assert in their motion that this factor weighs in favor of transfer.

Plaintiff agrees that this factor does not weigh in favor of transfer.

**IV.**    **Conclusion.**

Defendants have failed to meet their burden of showing that the Northern District of California is clearly more convenient than the Eastern District of Texas.   Accordingly, Defendants' motion to transfer venue should be denied.

Dated:  May 2, 2011              Respectfully submitted,

By: */s/ Christin Cho*
Christin Cho
CA State Bar No. 238173
E-mail: christin@dovellaw.com
Gregory S. Dovel
CA State Bar No. 135387
E-mail: greg@dovellaw.com
Julien Adams
CA State Bar No. 156135
E-mail: julien@dovellaw.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069

Robert Christopher Bunt
State Bar No. 00787165
Email: rcbunt@pbatyler.com
Charles Ainsworth
State Bar No. 00783521
Email: charley@pbatyler.com
Robert M. Parker
State Bar No. 15498000
Email: rmparker@pbatyler.com
Parker, Bunt & Ainsworth, P.C.
100 East Ferguson, Ste. 1114

Tyler, TX 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687

ATTORNEYS FOR PLAINTIFF
LAKE CHEROKEE HARD DRIVE
TECHNOLOGIES, L.L.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following counsel of record, who are deemed to have consented to electronic service are being served this 2nd day of May 2011, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Christin Cho*
Christin Cho

11