IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LAKE CHEROKEE HARD DRIVE TECHNOLOGIES, LLC., | § § § § § § § § § § § | |
| Plaintiff, | | |
| | | CASE NO. 2:10-cv-216-JRG |
| v. | | |
| BASS COMPUTERS, INC., et al., | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Pending before the Court is Defendants Bass Computers, Inc. ("Bass"), LSI Corp. ("LSI"), Marvell Semiconductor, Inc. ("Marvell"), and Tech Data Corp. ("Tech Data") (collectively "Defendants"[1]) motion to transfer. (Dkt. No. 102.) The Defendants contend that the Northern District of California is a more convenient forum than the Eastern District of Texas and seek to transfer venue pursuant to 28 U.S.C. § 1404(a). The Court, having considered the venue motion and related briefing, DENIES the Defendants' motion to transfer venue because the balance of the "private" and "public" factors demonstrates that the transferee venue is not "clearly more convenient" than the venue chosen by Plaintiff Lake Cherokee Hard Drive Technologies, LLC ("Lake Cherokee" or "Plaintiff"). *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F. 3d 1388, 1342 (Fed. Cir. 2009); *In re TS*

---

[1] Samsung Semiconductor, Inc. ("Samsung") also joined in the motion, but has since been dismissed from this litigation. (Dkt. No. 137.) Bass and Tech Data were signatories to the original motion, but did not join in Defendants' Reply (Dkt. No. 163) or Supplemental Brief (Dkt. No. 186.)

*Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Lake Cherokee brought this patent infringement lawsuit against multiple defendants for infringement of U.S. Patent Nos. 5,844,738 entitled "Synchronous Read Channel Employing a Sequence Detector with Programmable Detector Levels" (the '738 Patent) and 5,978,162 entitled "Synchronous Read Channel Integrated Circuit Employing a Channel Quality Circuit for Calibration" (the '162 Patent). Plaintiff Lake Cherokee is a Texas Limited Liability Company maintaining a principal place of business in the Eastern District of Texas. Lake Cherokee's parent company, President, and owners all reside in the Eastern District of Texas. The parties dispute how much weight should be given to the fact that Lake Cherokee is located in the Eastern District of Texas – primarily because Lake Cherokee incorporated in Texas only eight days before it acquired the asserted patents and just over four months before it filed this lawsuit. Defendants also question the true extent to which Lake Cherokee's President and parent company are tied to the Eastern District of Texas. These issues will be discussed later in the Memorandum Opinion and Order.

This lawsuit was originally filed against eight defendants, of which four remain. One is Bass, a Texas corporation with its principal place of business in Houston, Texas. Another defendant, LSI, is headquartered in Milpitas, California, but maintains three offices in Texas: a sales office in Houston, which employs approximately 19 people; another sales office in Plano (within the Eastern District of Texas), which employs approximately 8 people; and an engineering office Austin, which employs approximately 165 people. A third defendant, Marvell, is a California corporation with its principal place of business in Santa Clara,

California. However, it has two offices in Texas: a design center in Austin and a sales and marketing office in Houston. Finally, Tech Data is a corporation organized and existing under the laws of the state of Florida with a principal place of business in Clearwater, Florida. Tech Data has a distribution center in Ft. Worth, Texas.

On April 5, 2011, the Defendants filed this motion to transfer venue to the Northern District of California. This Memorandum Opinion and Order addresses the merits of the motion to transfer and its related briefing.[2]

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory

---
[2] Also before the Court are Plaintiff's response, Plaintiff's supplemental response, LSI's and Marvell's reply, Plaintiff's sur-reply, LSI's and Marvell's supplemental brief, and Plaintiff's response to the supplemental brief (Dkt. Nos. 118, 151, 163, 167, 186 and 189.)

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### A. Proper Venue

The Plaintiff does not dispute that this case could have been brought in the Northern District of California, so the initial threshold in this case has been met and analysis of the public and private interests cited above must be considered and weighed.

### B. Plaintiff's Presence in the Eastern District of Texas and Deference to the Plaintiff's Choice of Forum

Before proceeding to consider the private and public interest factors, the Court addresses two issues regarding deference and the burden of proof.

First, Defendants argue that Lake Cherokee's location in the Eastern District of Texas deserves no deference because it incorporated just days before being assigned the patents-in-suit and only months before filing this lawsuit. According to Defendants, Lake Cherokee is merely an artifact of litigation, because its sole listed manager is located in Longview, Texas and because its listed address is a post office box in that city. Defendants ask this Court to conclude that Lake Cherokee was incorporated in this District specifically to avail itself of the judicial

4

system within the Eastern District of Texas and that its presence here is "recent, ephemeral, and an artifact of litigation." Lake Cherokee responds that: (1) it incorporated in the Eastern District because its parent company, STAR CO,[3] is located here; (2) Lake Cherokee's President, Mr. Coverstone ("Coverstone"), resides, along with his family, in the Eastern District of Texas; and (3) Lake Cherokee and STAR CO have substantial, tangible, and permanent – not ephemeral – ties to the Eastern District of Texas. (Dkt. No. 151, at 2.)

Defendants dispute Lake Cherokee's statements and contend that Coverstone and STAR CO have only "illusory" ties to the Eastern District of Texas. (Dkt. No. 163, at 4.) Specifically, Defendants question the extent of – and the underlying motives behind – Coverstone's ties to this District. They point out that he owns a residence in Rancho Santa Fe, California, while only renting a home in Hallsville, Texas. Further, they argue that in a recent deposition he misstated the address of his home in Hallsville, Texas.[4] Defendants also allege that STAR CO, though incorporated more than three years ago, was nonetheless created solely as a vehicle for litigation in the Eastern District of Texas.[5]

Within this context, the Court is tasked with determining whether Lake Cherokee is only an "ephemeral" entity created intentionally to manipulate venue. *See Novelpoint Learning LLC*

---

[3] Lake Cherokee is a wholly owned subsidiary of STAR CO, a Texas company permanently based in the Eastern District of Texas. STAR CO has been in operation since November 2009, and allegedly provides services in the areas of science, technology, and advanced research. Lake Cherokee asserts that all of STAR CO's operations, including its offices, building, employees, decision-makers, and owners, are all located in the Eastern District of Texas. (Dkt. No. 151, at 2.) Lake Cherokee operates out of STAR CO's offices, and alleges that it will soon be moving with STAR CO to a new 10,000 square foot building owned by STAR CO in Longview, Texas. Longview is located within the Eastern District of Texas and is twenty-five miles from this Court. (Dkt. No. 151, at 3.)

[4] Coverstone was asked to provide his residence address and responded: "105 Mossy Drive" in Hallsville, Texas. This is the same address listed on his driver's license, which was issued in January 2010. Apparently Coverstone misstated his address, which is actually 105 Mossy *Creek* Drive in Hallsville. (Dkt. No. 163, at 3.)

[5] The parties agree that STAR CO is involved in at least one non-litigation focused business venture related to flash storage devices. Beginning in June 2011, STAR CO began buying flash storage devices from China and reselling them over the internet. This portion of STAR CO's business has several employees. Defendants argue that the sole purpose of this line of business is also to manipulate venue. Defendants argue that most of STAR CO's employees are part-time employees or college students summer internships. (Dkt. No. 163, at 5.) STAR CO's flash memory business has generated approximately $5,000 in revenues since its inception. (Dkt. No. 151, at 2.)

5

*v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010). "[T]he Federal Circuit has concluded that an entity that does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum is an 'ephemeral' entity." *Id.* (citing *In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)). Direct guidance from both the Fifth Circuit and Federal Circuit on this issue is substantially limited at present and neither has enunciated a clean and bright-line rule. It is obvious, however, that the main concern in two recent Federal Circuit cases is whether a Plaintiff is attempting to *manipulate venue* in the transferor district by, as illustrated in *In re Zimmer*, having an illusory office in the transferor district or, as in *In re Microsoft*, incorporating under the laws of the state in which the transferor district lied merely sixteen days before filing the lawsuit. *In re Zimmer*, 609 F.3d at 1381; *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). Therefore, after *In re Zimmer* and *In re Microsoft*, whenever the "legal fiction" or "ephemeral entity" issue is raised, it is the Court's duty to carefully scrutinize the particular party's claim that its principal place of business is validly fixed in the transferor district—i.e., to determine whether the party is trying to manipulate venue through its place of incorporation or principal place of business. *In re Zimmer*, 609 F.3d at 1381 ("MedIdea argues that, unlike *Hoffmann-LaRoche*, its decision to claim its principal place of business in Texas does not require close scrutiny. We disagree.").

The Court has an obligation to separate truth from fiction and closely scrutinize Lake Cherokee's decision to incorporate in Texas and have its principal place of business in the Eastern District of Texas. Defendants have established that Lake Cherokee incorporated in Texas only eight days before acquiring the patents-in-suit and just a few months before filing this lawsuit. Defendants have also shown that Coverstone maintains a residence in both Rancho

6

Santa Fe, California and in Hallsville, Texas. STAR CO is involved in a number of business ventures, several involving litigation, and at least one non-litigation enterprise that has been, thus far, commercially unsuccessful. In light of these allegations, it is plausible that Lake Cherokee is attempting to manipulate venue. For example, in *In re Microsoft*, the plaintiff that incorporated in Texas sixteen days before filing the lawsuit was deemed to "exist for no other purpose than to manipulate venue." *In re Microsoft*, 630 F.3d at 1365. However in that case, the plaintiff also:

> [O]perated from the United Kingdom by the patent's co-inventor and company's managing member, John Mitchell. Although [plaintiff] now maintains an office in Tyler, Texas, it is not disputed that the entity does not employ individuals in those offices or anywhere in the United States. [Plaintiff's] website directs requests and inquiries to its Texas office, and Mitchell then answers those requests and inquiries from the U.K.

*Id.* at 1362.

Though the current case law establishes clear principals to be upheld, each case has such unique facts that every case must be decided by applying such principals to the varied and disparate factual context that unavoidably exists from case to case. Here, the Defendants, as the party with the burden, have not gone far enough to meet their burden to establish that Lake Cherokee was incorporated in the Eastern District of Texas merely to manipulate venue. The isolated fact that Lake Cherokee incorporated in Texas four months before filing this lawsuit is, by itself, inadequate. *See Novelpoint*, 2010 WL 5068146, at *5 (noting that the party was not "ephemeral" when it incorporated four months before it filed suit but also had two principals that lived in Texas). Lake Cherokee's president maintains a residence in this District and Lake Cherokee's and STAR CO's employees reside in this District. The Defendants' arguments regarding Coverstone's and STAR CO's allegedly "illusory" ties to the Eastern District are not sufficient to persuade the Court that Lake Cherokee's presence in this District is merely ephemeral. Despite all of Defendant's allegations of venue manipulation, it cannot be disputed

7

that Coverstone has possessed a Texas Driver's License since 2005, that he has a fixed residence and resides in the Eastern Distrct – at least on a partial basis –, and that STAR CO is a Texas Corporation that has maintained a business presence in the Eastern District since 2009. (Dkt. No. 118, at 2.) Lake Cherokee clearly has much stronger ties to the Eastern District than the United Kingdom-based Plaintiff in *Microsoft*. The factual context of this case, when viewed fairly by the Court in light of *In re Zimmer* and *In re Microsoft* does not squarely support the conclusion that Lake Cherokee's incorporation in Texas was merely for the purpose of manipulating venue.

However, even though this Court finds that Lake Cherokee's presence in this District is not ephemeral, the Court will assume, simply for the sake of argument, that Lake Cherokee did incorporate in Texas to manipulate venue and that Lake Cherokee currently has no significant ongoing business operations in Texas that might otherwise carry weight in the transfer analysis. *See Innoband, Inc. v. ASO Corp.*, 2:10-cv-191-TJW-CE, 2011 WL 835934, at *2 (E.D. Tex. Mar. 4, 2011) (making a similar assumption for sake of argument). Accordingly, the Court will attach minimal weight to the location of Lake Cherokee's principal place of business in Texas.

Additionally, before the Court proceeds to undertake the public and private factor analysis discussed above, a discussion of the burden of proof to be applied in this motion to transfer venue is warranted. The Defendants state that "Lake Cherokee's choice of venue receives no deference." (Dkt. No. 102, at 7.) The Court disagrees. In *Texas Data Co., L.L.C. v. Target Brands, Inc.*, this Court noted in a different but related context:

> The Fifth Circuit does not consider the plaintiff's choice of venue independently but instead as part of the burden. . . . But because the plaintiff's choice of venue is taken into account in the burden on the movant, the Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly. The Fifth Circuit announced:

8

> Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.
>
> [*Volkswagen II*, 545 F.3d at 314 n.10.] The court's analysis in *Volkswagen II* reflected the importance to the plaintiff's choice of venue, as the court issued a writ of mandamus to transfer venue in that case only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer.

771 F. Supp. 2d 630, 638-39 (E.D. Tex. 2011). Lake Cherokee's decision to file in this District (i.e., plaintiff's choice of forum) "places a significant burden on [the Moving Defendants] to show good cause for the transfer." *Volkswagen II*, 545 F.3d at 314 n.10. When this Court assumes, for the sake of argument, that Lake Cherokee incorporated in Texas to manipulate venue, such assumption does not change the movants burden of proof. Rather, if Lake Cherokee incorporated in Texas to manipulate venue, that would change the weight the Court should attribute to Lake Cherokee's principal place of business in Texas, but it does not change or reverse the Defendants overall burden to show that the transferee venue is clearly more convenient than the venue chosen by the plaintiff.[6] As a result, the Defendants must satisfy and meet the usual burden of showing that the transferee venue is clearly more convenient than the venue chosen by the plaintiff. With this burden satisfied, the Court now moves to consider the public and private interests existing in this case.

---

[6] *In re Zimmer* illustrates this distinction. There, the Federal Circuit noted that "MedIdea [the plaintiff] therefore has no presence in Texas that should be given weight in the transfer analysis." *In re Zimmer*, 609 F.3d at 1381. But in concluding, the Federal Circuit recognized that the movant still had the burden when it stated that "we determine that the [movants] have met their *burden* of demonstrating that transfer in this case is required." *Id.* at 1382 (emphasis added). Thus, although *In re Zimmer* recognized that the plaintiff's presence in Texas should be given minimal weight, if any, *In re Zimmer* continues to recognize that the movant still had the burden of showing that transfer is clearly warranted.

### C. Private Interest Factors

#### i. *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first "private" interest factor to be considered. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). There are four remaining Defendants in this case, and the Court considers each in turn.

#### Bass

Bass is a Texas corporation with its principal place of business in Houston, Texas. It is undisputed that all of Bass's documents and witnesses relating to this litigation are located in Texas, in a District adjacent to, but outside of, this District.[7]

#### LSI

LSI is incorporated under the laws of the state of Delaware and has a principal place of business in Milpitas, California (within the Northern District of California). LSI has three offices in Texas. One office, in Plano, is located within the Eastern District of Texas. LSI's Plano office is a sales office and Defendants argue that it does not house any documents relating to the development or manufacture of any accused products. According to LSI, all of its relevant

---

[7] Bass joined the original transfer motion, but did not join in the Defendants' subsequent briefing.

documents are located at its Milpitas facility in California. LSI states that it is unaware of any employees in the Eastern District of Texas having knowledge or expertise related to the accused products. (Dkt. No. 102, at 4.) At the time the transfer motion was filed, LSI was unaware of any potential non-party witnesses.

Lake Cherokee argues in response that LSI's relevant technical documents are easily accessible from Texas, because they are stored electronically and can be accessed electronically from different locations. (Dkt. No. 151, at 5.) Lake Cherokee also challenges that LSI's business activities are centralized in the Northern District of California, by arguing that: (1) that three out of the five executives that LSI identifies as its "management team," including its President and CEO, are located outside of California (one in Colorado and two in Pennsylvania); (2) that LSI's 30(b)(6) witness who testified regarding venue was produced in Allentown, Pennsylvania; and (3) three out of the four LSI employees listed in LSI's initial disclosures are based in Allentown, Pennsylvania. (Dkt. No. 167, at 7.) Lake Cherokee also notes that none of the possible LSI witnesses with expertise relevant to this case reside or work in California. Rather, they are located in Allentown, Pennsylvania; Longmont, Colorado; Beaverton, Oregon; Ottawa, Canada; China and Russia. (Dkt. No. 102.)

<u>Marvell</u>

Marvell is a California corporation with its principal place of business in Santa Clara, California. Marvell's read channel products (accused in this case) were designed and developed in the Northern District of California, in Santa Clara. Marvell contends that documents related to the design and operation of the accused read channel products, and witnesses knowledgeable about the same, are located in Santa Clara. Marvell maintains two offices in Texas, but neither is

in the Eastern District and neither relates to the accused read channel products. (Dkt. No. 102, at 5.)

Lake Cherokee responds that Marvell's own website implies that its System Engineering Group for Hard Disk Drive Read Channels is actually located in Longmont, Colorado, which is essentially equidistant from the Northern District of California and the Eastern District of Texas. Lake Cherokee argues consequently that Marvell relevant witnesses and documents will also likely be located in Colorado, not California.

### Tech Data

Tech Data is a corporation organized under the laws of the State of Florida and it has its principal place of business in Clearwater, Florida. Tech Data has a distribution center in Ft. Worth, which is located in the Northern District of Texas. All Tech Data witnesses and documents are believed to be located in or near Clearwater, Florida. These witnesses and documents are approximately 1500 miles closer to the Eastern District of Texas than to the Northern District of California.[8]

### Third Parties

The parties have identified several third parties that may have documents or witnesses relevant to this litigation, including: (1) Cirrus Logic, headquartered in Austin, Texas, the original assignee of the patents; (2) Broadcom Corporation, based in Southern California, the party that most recently transferred the patents to Lake Cherokee; (3) the patents' inventors, generally located in Colorado; and (4) over a dozen other third party witnesses, primarily located in Texas, that Lake Cherokee alleges to have knowledge of the validity of the patent or the state of the prior art at the time of the patent. On average, the distance between third-party witnesses

---

[8] Tech Data joined the original transfer motion, but did not join in the Defendants' subsequent briefing.

and this District appears to be more than 800 miles shorter than the distance between third-party witnesses and the Northern District of California.

The Court finds that the ease of access to documents, evidence and testimony with regard to Bass, Tech Data, Cirrus Logic, and other third-party witnesses weighs against transfer; and that the ease of access with regard to LSI, Marvell and Broadcom weighs in favor of transfer. In sum, even assuming that Lake Cherokee's business location in Texas should be given no weight, the most the Defendants have shown is that this factor is neutral.

     *ii.*  *Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

The Defendants have not identified any non-party witnesses in this case that are located within the Northern District of California. However, Defendants note that at least two non-party witnesses in this case are located in California – the prosecuting attorney of the patents-in-suit and representatives from Broadcom Corporation.

Lake Cherokee has identified several third-party witnesses, including: the inventors of the patents, located in Colorado; the original assignee of the patents, Cirrus Logic, which is located in Austin, Texas; and over a dozen other witnesses, primarily located in Texas (two of which are located in the Eastern District) that are believed to have knowledge regarding validity issues and the state of the prior art. Lake Cherokee argues that the Eastern District of Texas has subpoena power over a greater number of third-party witnesses than the Northern District of California

because this Court's subpoena power extends to witnesses within the state of Texas for purposes of trial, not just the 100-mile radius of this district. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) ("Since the specified witnesses reside within the State of Texas, they are within this Court's subpoena range.") Lake Cherokee also argues that the affidavits supplied by Bass, Tech Data, and LSI fail to identify any potential witness located within the Northern District of California.

In light of these facts, the Court finds that this factor weighs slightly against transfer.

### iii. Cost of Attendance for Willing Witnesses

Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of California. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

In this case, the evidence with respect to this factor is closely aligned with the first factor discussed above—the relative ease of access to sources of proof. As the Court found with respect to that factor, the most that the Defendants have shown is that this factor is neutral.

    *iv.*    *Other Practical Problems*

Neither party has pointed out other practical problems that would weigh in this transfer analysis. Therefore, this factor is neutral.

**D.    Public Interest Factors**

    *i.*    *Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Defendants argue that the median length of time from filing to trial is slightly shorter in the Northern District of California than in the Eastern District. However, Lake Cherokee counters that the average time to trial in *patent* cases is significantly longer in the Northern District of California when compared with this District. On balance, the Court finds that this factor is neutral.

    *ii.*    *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing

products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

The Defendants argue the Northern District of California has a local interest in this dispute. Specifically, Defendants contend that: (1) several of the Defendants' are headquartered there; (2) certain Defendants' employee witnesses and relevant documents are located there; (3) Defendants have some level of business presence there; and (4) Defendants play a role in the economy there. (Dkt. No. 102, at 14.)

Lake Cherokee argues that this District has a local interest for various reasons related to Lake Cherokee, STAR CO's, and Coverstone's ties to the district. But as noted above, the Court assumes that Lake Cherokee's presence in the Eastern District is inconsequential for purposes of the eight-factor test. LSI has an office in this District, demonstrating that this District also has a local interest. On balance, however, this factor weighs slightly in favor of transfer.

### iii. Familiarity with the Governing Law

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

### iv. Avoidance of Conflict of Laws

No conflict of laws issues are expected in this case, so this factor does not apply.

## V. CONCLUSION

In conclusion, this is not a case where transfer is clearly warranted. When this motion to transfer was originally filed a major Defendant – Samsung – resided in the Northern District of California, but was later dismissed. Further, two of the remaining Defendants – Bass and Tech

Data – joined in the original motion, but have not joined in any subsequent reply. At this time, even ignoring Lake Cherokee's presence in Texas, of the four defendants left in this case, one is located in California, one in Florida, another in Texas, and a fourth, LSI, has offices, evidence and witnesses scattered throughout the country. As such, when considering these realities as well as analyzing the public and private interest factors the result is substantially neutral. The most the Defendants have proven is that one factor weighs slightly in favor of transfer while one factor weighs slightly against transfer.

Essential neutrality is simply not sufficient for Defendants to show that the Northern District of California is a clearly more convenient than the Eastern District of Texas. As in baseball, where a "tie goes to the runner," in transfer disputes a "tie goes to the respondent." The Defendants motion to transfer is DENIED.

**So ORDERED and SIGNED this 12th day of February, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE