IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LAKE CHEROKEE HARD DRIVE TECHNOLOGIES, LLC., <br><br> Plaintiff, <br><br> v. <br><br> BASS COMPUTERS, INC., et al., <br><br> Defendants. | § § § § § § § § § § § § §    CASE NO. 2:10-cv-216-JRG |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Pending before the Court is Marvell Semiconductor, Inc.'s ("Marvell") motion to disqualify Mr. William R. Foland ("Foland") from serving as an expert witness or expert consultant for Plaintiff Lake Cherokee Hard Drive Technologies, L.L.C. ("Lake Cherokee"). (Dkt. No. 147.)  Marvell contends that Lake Cherokee's retention of Foland as an expert is improper because "Mr. Foland (1) formerly was a Senior Director at Marvell, and was privy to Marvell's confidential, proprietary, and privileged information; (2) upon leaving Marvell in 2009, he refused to acknowledge his obligation to protect Marvell's confidential information; (3) would inevitably use his secret, confidential, and/or privileged knowledge of Marvell to assist Lake Cherokee improperly; and (4) is also a fact witness as a named inventor of the patents in suit and thus, it is improper for Lake Cherokee to shield its communications with him behind the cloak of privileged, work product, and/or under Fed. R. Civ. P. 26(b)(3) & (4)." *Id.*, at 1-2.

Marvell also contends that "allowing Mr. Foland to testify as an expert witness will also severely prejudice all Defendants and undermine the integrity of the legal process." *Id.*, at 2.

The Court, having considered the parties' written submissions, GRANTS-IN-PART and DENIES-IN-PART Marvell's motion to disqualify Foland as an expert. Foland shall not be permitted access to documents produced by Marvell in discovery designated as "Confidential," "Confidential – Outside Counsel Only," or "Confidential – Outside Counsel Only – Source Code." Moreover, Foland shall be disqualified from serving as an expert witness or consultant regarding Marvell's alleged infringement of the patents-in-suit. To that extent the Motion is granted. The Court declines, however, to disqualify Foland from serving as an expert witness or consultant in every aspect of this case, and Foland is permitted to serve as an expert witness (subject to any future *Daubert* Motion) or consultant in other capacities, including claim construction and patent validity. To that extent, the Motion is denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Lake Cherokee brought this patent infringement lawsuit against multiple defendants for infringement of U.S. Patent Nos. 5,844,738 entitled "Synchronous Read Channel Employing a Sequence Detector with Programmable Detector Levels" (the '738 Patent) and 5,978,162 entitled "Synchronous Read Channel Integrated Circuit Employing a Channel Quality Circuit for Calibration" (the '162 Patent). Foland is a named inventor of both patents asserted in this case. (Dkt. No. 147, at 2.) Foland and his co-inventors filed the applications that resulted in the issuance of these two patents during the course of their employment at Cirrus Logic, Inc. ("Cirrus Logic"), and assigned their rights to Cirrus Logic. *Id*. The '738 patent issued on December 1, 1998, and the '162 patent issued on November 1, 1999. On February 6, 2004,

Cirrus Logic assigned the '738 and '162 patents to Broadcom Corporation. Subsequently, on April 15, 2010, Broadcom assigned the patents to Lake Cherokee.

In November 2003, Foland began his employment as Senior Director in Marvell's Optical Products Group, a position he held for almost six years. As a condition of his employment, Foland was required to and did sign a confidentiality agreement whose provisions would be in effect "at all time during the term of [his] employment and thereafter." *Id.*, at Ex. C. According to Marvell, during his six years of employment, Foland was privy to proprietary information regarding Marvell's strategies germane to the securing and maintenance of intellectual property rights. *Id.*, at 3. Further, Foland filed several patent disclosures with Marvell's in-house counsel that became the basis for national and international patent applications; two of which have issued since as patents. *Id*. Foland worked at Marvell until May 2009, when he was involuntarily terminated by Marvell as part of a company-wide Reduction in Force. *Id.*, at Ex. F.

On July 8, 2011, pursuant to paragraph II.B of the Protective Order in this case, Lake Cherokee informed the four Defendants of its intention to retain Foland as an expert consultant. *Id.*, at 4. Marvell timely objected on July 15, 2011, the parties met-and-conferred with no resolution, and Marvell now seeks an order disqualifying Foland as an expert consultant or expert witness in this case.[1]

## III. LEGAL STANDARDS

The Court has the inherent power to disqualify an expert. *Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). In *Koch*, the Fifth Circuit adopted the two-step analysis used by lower courts in disqualification cases: (1) whether the opposing party had a

---

[1] None of the three other Defendants in this case have objected to Mr. Foland, and Lake Cherokee, presumably, has already shared confidential documents relating to the other Defendants with Mr. Foland in accordance with the terms of the Protective Order.

confidential relationship with the expert; and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert. *Id.* (citation omitted). The party seeking disqualification bears the burden of proving these elements, and only if both prongs are met should the witness be disqualified. *Id*. A number of courts also consider the public interest in deciding whether or not to allow a given expert to testify. *Id*.

## IV. ANALYSIS

### A. Foland Had a Confidential Relationship with Marvell

Marvell asserts – and Lake Cherokee does not dispute – that Foland is bound by the confidentiality agreement that he signed upon beginning his employment at Marvell in 2003. Consequently, it is objectively reasonable to conclude that a confidential relationship existed between Foland and Marvell. Therefore, the first prong of the *Koch* test is satisfied.

### B. Marvell Disclosed Confidential and/or Privileged Information Relevant to the Instant Case to Mr. Foland

Marvell contends that during his six years with the company, Foland became privy to confidential information related to both Marvell's business and technology strategy for their storage business segment, which includes the read channel products currently accused of infringing the two asserted patents. (Dkt. No. 147, at Ex. A.) According to Marvell, as a Senior Director, Foland attended business strategy meetings and had access to Marvell's highly confidential product roadmaps, which included information about current and future products. Marvell also argues that Foland was provided with proprietary information regarding Marvell's strategies applicable to the securing and maintenance of intellectual property. *Id.*

Lake Cherokee responds that Foland did not receive any confidential or privileged information related to the current litigation because: (1) Foland's employment with Marvell ended before this litigation began; and (2) the technical information learned by Foland (related to

4

optical products) during his time at Marvell is not relevant to the accused products in this litigation (hard disk drives). (Dkt. No. 153, at 5.)

After carefully reviewing the parties' arguments and authorities, the Court is persuaded that Foland did indeed receive confidential information relevant to this litigation during his time at Marvell. Foland was a Senior Director of a storage product group and therefore very likely had access to Marvell's highly confidential product roadmaps regarding storage. (Dkt. No. 154.) Foland worked on Marvell products that are similar to those that are now being accused of infringement. The knowledge that Foland gleaned from Marvell is germane to this litigation, especially to Lake Cherokee's infringement claims and analysis. *See WesternGeco LLC v. Ion Geophysical Corp.*, No.09-1827, 2010 U.S. Dist. LEXIS 54523, at *3-7 (S.D. Tex. June 2, 2010) (disqualifying former employee as expert because, even if the employee did not work directly on projects related to the accused products, the employee would nonetheless use the confidential knowledge gained during his employment in evaluating the employer's confidential documents.); *see also Nike, Inc. v Adidas America, Inc.*, No. 9:06-cv-43, 2006 WL 5111106, at *3 (E.D. Tex. 2006) (disqualifying a former expert retained in earlier litigation involving similar products, stating that: "The risk is too great that Dr. Cavanaugh would use the information he was given, even if inadvertently, to harm Adidas.")

However, while it is readily apparent that the type of confidential information available to Foland would directly relate to the infringement contentions asserted against Marvell by Lake Cherokee, it is equally apparent that Foland's ability to act in an expert capacity outside of the infringement arena is unlikely to have been compromised by his exposure to Marvell's product roadmaps regarding storage. Accordingly, the Court finds that the second prong of the *Koch* test

is satisfied with regard to Marvell's alleged infringement, but not with regard to other issues in the case, such as claim construction and validity.

### C. The Public Interest Weighs in Favor of Permitting Foland to Serve as an Expert Witness or Consultant in Other Aspects of the Case

Finally, the Court has considered the public interest in allowing or not allowing Mr. Foland to testify as an expert in this case. *See Koch*, 85 F.3d at 1181. While the public interest clearly weighs in favor of curtailing Foland's access to Marvell's confidential documents and his ability to render opinions or advice regarding Marvell's alleged infringement, the public interest weighs equally clearly in favor of allowing Lake Cherokee an opportunity to consult with the actual inventor of the patents-in-suit on issues relating to claim construction and validity.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that Marvell's Motion to Disqualify William R. Foland as Expert Witness and Expert Consultant is **GRANTED-IN-PART**, as follows: Foland is prohibited from consulting or serving as an expert for Lake Cherokee with regard to Marvell's alleged infringement of the patents-in-suit, and Foland is prohibited from accessing documents produced by Marvell that have been designated with any level of confidentiality. However, the Motion is also **DENIED-IN-PART** such that Foland's ability to consult or serve as an expert for Lake Cherokee with regard to other issues in this case, specifically including claim construction and patent validity, is permitted and allowed.

**So ORDERED and SIGNED this 5th day of March, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

6